UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas

FEB 14 2023

Clerk, U.S. District Court
By_____ Deputy Clerk

Melissa Deann Authier )
)
vs. )
) **5:23-cv-03044-JWL**
)
)
)
RRM Kansas )
)

**MOTION TO HAVE SENTENCE REDUCED TO TIME SERVED UNDER 28 U.S.C. § 2241**
(FSA credits have not issued)

Now comes the Defendant, Melissa Deann Authier, pro se, and asks this Honorable court to order credit for her previously earned, but never accredited FSA credits under the First Step Act. Since her home confinement, the BOP has not given her any First Step Act credits. The Bureau of Prisons states that all non-credited reductions would be received on home confinement.[1] Yet, the RRM located at

RRM Kansas City
RESIDENTIAL REENTRY OFFICE
400 STATE AVE., STE 800
KANSAS CITY, KS 66101

consistently states that they have no idea how to bring about these credits towards release. If Ms. Authier were to receive the proper credits, she would have finished her sentence and be on supervised release or she is owed credits that should have her very close to a release date. In addition, there is no need for the monitoring of Ms. Authier with an electronic bracelet as she self-surrendered and has no disciplinary infractions.

---

[1] *Dyer v. Fulgam*, No. 1:21-CV-299, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022) (concluding Section 3632(d)(4)(C) requires FSA time credits be applied to a term of supervised release). The statute expressly states FSA time credits "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)-1)(C). Based upon *Dyer*, which the Court finds persuasive, and the plain language of statute, the Court concludes Mincey is entitled to have all unused FSA time credits applied to his term of supervised release. Mincey was released from BOP custody on June 3, 2022. The FSA time credits he earned were not applied to his time in prerelease custody. Thus, the statute requires the FSA time credits to be applied to his term of supervised release. 18 U.S.C. § 3632(d)(4)(C).

https://casetext.com/case/united-states-v-mincey-11?jxs=cdil,ndil,sdil,ndin,sdin,edwi,wdwi,dmn,dne,dnd,dsd,edar,wdar,ndia,sdia,edmo,wdmo,dme,dma,dnh,dpr,dri,2cir,dde,dnj,dvi,edpa,mdpa,wdpa,dmd,dsc,ednc,mdnc,wdnc,edva,wdva,ndwv,sdwv,edla,mdla,wdla,ndms,sdms,edtx,ndtx,sdtx,wdtx,edky,wdky,edmi,wdmi,ndoh,sdoh,edtn,mdtn,wdtn,dak,daz,dgm,dhi,did,dmt,dnv,dor,cdca,edca,ndca,sdca,edwa,wdwa,dco,dks,dnm,dut,dwy,edok,ndok,wdok,mdal,ndal,sdal,mdfl,ndfl,sdfl,mdga,ndga,sdga,ddc&p=1&q=federal%20bop%20fsa%20credits%20applied%20to%20probation&sort=relevance&type=case&ssr=false&scrollTo=true&find=#pa19

Proper credits of FSA would possibly release her to her supervised release. She has been successfully on home confinement for almost a year.

Defendant is a first-time, non-violent offender with a minimal PATTERN score that allowed her to move to home confinement. The Defendant has never had any infractions and is low security; there is no stated necessity for a monitor. It rubbed her ankle raw. The RRM can alternatively have her use the phone for check-ins. Telephonic check-ins is standard procedure at most RRMs for minimum security people. In October, the RRM woke up Ms. Authier's family including her small children at 3:07 AM to tell her the monitor was malfunctioning and to report to the RRM in the morning. She reported as required and then at 3 o'clock in the afternoon she got a call from the RRM telling her she disconnected her monitor! She had it disconnected at the RRM. The unnecessary stress caused by the mismanagement of her electronic monitor can be easily managed by removing this requirement, crediting her FSA credits and reducing her sentence to time served.

As stated previously, Defendant had no violations without a monitor during the two years she was in pre-sentencing status and no violations while in prison. The monitor is an extra expense and has been known to malfunction causing stress and harm to those forced to wear them for non-security reasons. Defendant has no risk of recidivism and was in a camp while in prison.

Defendant learned about another woman on home confinement who was in a grocery store when some stranger announced to the entire store that she was wearing a monitor and to "check her ID carefully!" Defendant remains chastened and remorseful. Now she is also humiliated and unduly stressed by this additional penalty. Please order the removal of the ankle monitor- it truly serves no purpose other than to humiliate.

Under 28 U.S.C. § 2241, the failure of the Bureau of Prisons and the RRM to comply with the First Step Act and the failure to make First Step Act credits transparent is a violation of Ms. Authier's constitutional rights. Defendant believes that she is due FSA credits but is unable to get information. The halfway house does not comply with offering programs proscribed by the First Step Act. The Act gives credits when no programs are offered. Credits for this lack of availability and lack of accreditation would have the sentence ending much sooner than 12/2023 listed on BOP records. In addition, the FSA hours for achieving a GED and other courses taken during her incarceration would subtract months from this incorrect calculation of the end date. With FSA credits we estimate her release date to be approximately 2/2023. Should the FSA credits continue to be applied in a manner that is in violation of the Congressional intent the only remedy is with the courts as the RRM disavows all knowledge of FSA procedure., Ms. Authier sates as follows, "I humbly ask this court to take mercy on me and my children and to reduce my sentence to time served, and therefore allow me to begin my probation or in the alternative to remove the requirement for electronic monitoring and order the BOP to provide proper FSA calculations as required by Congress."

https://www.forbes.com/sites/walterpavlo/2022/11/17/us-senators-express-concern-with-bureau-of-prisons-implementation-of-first-step-act/?sh=436fce97c7ba

Article about failure to implement the First Step Act

https://www.forbes.com/sites/walterpavlo/2022/11/14/bureau-of-prisons-first-step-act--calculator-implementation-dealt-a-blow-in-federal-court/?sh=166ba1261e25

Dysfunctional First Step Act Calculator Implementation.

https://www.leagle.com/decision/infdco20221012b86 Case No. 2:22-cv-05292-MCS-GJS. ordered pursuant to 18 U.S.C. § 3632(d)(4)(C), the Bureau of Prisons shall (a) immediately calculate and apply Petitioner's earned time credits to date so as to ascertain his applicable release date, (b) thereafter release Petitioner on that release date pursuant to an appropriate placement within the discretion of the Bureau of Prisons, whether prerelease custody or supervised release, and (c) if that release date already has passed, release Petitioner within 20 days to either prerelease custody or supervised release, with the appropriate placement to be determined by the Bureau of Prisons.

11/17/22
New order from Director Colette Peters admitting to some allegations contained herein

## Bureau Of Prisons Director Colette Peters Issues Clear Guidance On First Step Act

**Walter Pavlo**
Contributor
Nov 18, 2022,04:14pm EST

BOP Director Colette Peters took a huge step in making her mark on the Federal Bureau of Prisons. Since assuming her role in August 2022, Peters, who came from the Oregon Department of Corrections, was tasked with leading an agency with many challenges. One of those was implementation of the First Step Act (FSA), which has been plagued by problems since being signed into law in December 2018.

One of the key features of FSA was the ability of prisoners to participate in programs and productive activities in order to earn up to a year off of their sentence and additional time in prerelease custody (halfway house and home confinement). However, federal prisoners have been confused over how the FSA would be implemented and their respective case managers in the BOP had few answers for them. Today, under Peters'

leadership, the BOP issued a program statement that clarifies some of the confusion over FSA.

The BOP issued a statement along with the policy today, nearly 10 months after the Federal Register published its Final Rule on FSA. Two primary issues that were of concern was the accuracy of the auto-calculator that went into place in October 2022 and a rule that froze FSA credits within 18 months of release. Both of those have been clarified and many federal prisoners will see a benefit in the coming days and weeks.

First, inmates will soon be able to see all potential Federal Time Credits (FTC) they may earn over the course of their sentence at their first Unit Team meeting. This means that the FSA credits will be a forward-looking calculation for Minimum and Low security inmates who are eligible for FSA, much like the Good Conduct Time credit, with an estimated out date. The BOP clarified, "This number is an estimate; however, credits may change depending on whether the inmate successfully participates in programming. Second, inmates will be able to earn credit while in administrative detention, such as protective custody or quarantine, if they continue participating in available programming opportunities provided to them. Finally, inmates will be able to continue earning credit while in the community, so long as they continue to successfully comply with all the rules and procedures of pre-release custody." This corrects a controversial BOP interpretation of FSA that would have led to thousands of prisoners staying in institutions for many additional months. This change also reflects the intentions of Congress when they passed FSA.

There was also considerable confusion over a survey that prisoners were supposed take upon entering prison. The survey was supposed to identify programming needs and, subsequently, an outline of the classes the prisoner would take to earn FSA credits. Many were not aware of the importance of the survey or were simply unaware of it, so many prisoners were listed as not compliant and not receiving FSA credits. Most prisoners only found out the importance of the survey once they received their FSA credits.

The BOP stated, "The Bureau used the January 2022 publication of Federal Regulations on the First Step Act time credits to manually calculate FTCs and, more recently, implemented automated calculation software. With the automation, some inmates noticed their time credit balance decreased due to incomplete needs assessments and/or declined programs. This policy includes a grace period, available until December 31, 2022, for inmates who have not completed all needs assessments or who have declined programs to try to address these issues. Beginning January 1, 2023, any incomplete needs assessments or any declined to participate codes will lead to the inmate not earning FTCs in accordance with the federal regulations."

The issuance of this program statement and Peters' leadership is a significant one for both prisoners and staff who have struggled since January to understand the BOP's position on these FSA credits.

Ms. Authier filed a previous motion in her trial court and that court said that this matter should be reached in Kansas because the RRM is in Kansas. Also, the Government did not respond, so the judge held that Ms. Authier could not prove her claim. The only way to perfect her claim is for the court to order compliance of the Bureau of Prisons, as only they can find the number of FSA credits owed and applied. No court should permit the rights under the First Step Act to be ignored willfully. Ms. Authier seeks to have her Constitutional rights protected by this Honorable Court. The Court held as follows:

> "To the extent Authier seeks an order directing the BOP to remove Authier's electronic monitoring device, the Court declines. The Court does not have jurisdiction to hear Authier's claim because she is currently in the custody of the Bureau of Prisons in Kansas. See Bell v. United States, 48 F.3d 1042, 1043–44 (8th Cir. 1995); see also Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 24, 2022). When a petitioner challenges the execution of her sentence, the claim is properly cognizable under 28 U.S.C. § 2241. Bell, 48 F.3d at 1043. The Attorney General, through the Bureau of Prisons, has responsibility for administering a defendant's sentence. See United States v. Chappel, 208 F.3d 1069, 1069–70 (8th Cir. 2000) (per curiam). Therefore, Authier's request for relief is denied without prejudice to Authier seeking relief Case 4:20-cr-00113-RGE-HCA Document 54 Filed 10/31/22 Page 1 of 2 2 under 28 U.S.C. § 2241 in the judicial district in which she is confined, in the United States District Court for the District of Columbia, or in any district in which the Bureau maintains a regional office, after exhausting administrative remedies. See Chappel, 208 F.3d at 1069–70."

As determined in *Jones V. Engleman*, Case No. 2:22-cv-05292-MCS-GJS, Ms. Authier requests that this Honorable Court rule as follows: "Pursuant to 18 U.S.C. § 3632(d)(4)(C), the Bureau of Prisons shall (a) immediately calculate and apply Petitioner's earned time credits to date so as to ascertain his applicable release date, (b) thereafter release Petitioner on that release date pursuant to an appropriate placement within the discretion of the Bureau of Prisons, whether prerelease custody or supervised release, and (c) if that release date already has passed, release Petitioner within 20 days to either prerelease custody or supervised release, with the appropriate placement to be determined by the Bureau of Prisons," consistent with the ruling in *Jones*.

Thank you for your consideration.

*Melissa Authier*
Melissa Authier
Pro Se
1/31/2023

Robert J. Dole Courthouse
Criminal Division
500 State Ave.
Kansas City, KS 66101


Certificate of Service
I hereby certify that a copy of the foregoing was emailed to
RRM Kansas City
RESIDENTIAL REENTRY OFFICE
400 STATE AVE., STE 800
KANSAS CITY, KS  66101

CKC-CCM@bop.gov

D STATES
L SERVICE ®

PRIORITY®
MAIL

RECEIVED
FEB 14 2023
CLERK, U.S. DISTRICT COURT
KANSAS CITY, KANSAS

P

US POSTAGE & FEES PAID
PRIORITY MAIL
ZONE 6 FLAT-RATE ENVELOPE
ComBasPrice

062S0014950611
18035916
FROM 02467

stamps endicia
02/06/2023

PRIORITY MAIL 2-DAY™

Wendy Golenbock
Justice Support Project/ Justice Support
100 LELAND RD
CHESTNUT HILL MA 02467-3215

SHIP TO:
ROBERT J. DOLE COURTHOUSE
CRIMINAL DIVISION
500 STATE AVE
KANSAS CITY KS 66101-2448

USPS TRACKING #

9405 5112 0621 4893 9764 42

USE

D

r 2021

VISIT US
ORDER FREE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.

